JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

FLOURNOY, MICHAEL

## DEFENDANTS

JONATHAN HEMINWAY, ET AL.

**(b)** County of Residence of First Listed Plaintiff   WASHTENAW
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   WASHTENAW
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
FLOURNOY, MICHAEL (SELF REPRESENTED)
FCI MILAN, PO BOX 1000, MILAN, MI  48160

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) | |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 1331

Brief description of cause:
BIVENS SUIT

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:
JUDGE   ROBERT H. CLELAND                DOCKET NUMBER   3:20-CV-10496

DATE
11/24/2020

SIGNATURE OF ATTORNEY OF RECORD
*Mr Flournoy Michael*

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?                    ☐ Yes
                                                                                ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other       ☒ Yes
          court, including state court? (Companion cases are matters in which   ☐ No
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: U.S. District Court, Eastern Division of Michigan

Case No.: 3:20-cv-10496

Judge: Robert H. Cleland

Notes : Writ of Mandamus



**UNITED STATES POSTAL SERVICE** ®

## CUSTOMER'S RECEIPT

KEEP THIS RECEIPT FOR YOUR RECORDS

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

**NOT NEGOTIABLE**

Pay to Clerk, U.S District Court
Address 231 W Lafayette, 5th
Detroit, Mi 48226

Serial Number
26393995484

Year, Month, Day 2020-11-24  Post Office 606431  Amount $400.00  Clerk 21

---

**UNITED STATES POSTAL SERVICE** ®

## POSTAL MONEY ORDER

Serial Number
26393995484

Year, Month, Day  Post Office  U.S. Dollars and Cents  $400.00

Four Hundred Dollars and 00/100 ****************

Amount

Clerk 21

Pay to Clerk, U.S. District Court
Address 231 W Lafayette, 5th
Detroit, Mi

From Michael Flournoy 44862-424
Address PO Box 1000, Milan, Mi

Memo Michael Flournoy - Filing Fee - Bivens Suit

© 2008 United States Postal Service. All Rights Reserved.

SEE REVERSE WARNING • NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

⑆000000800 2⑆  26393995484⑈



United States District Court, Eastern Division of Michigan

Mr. Flournoy, Michael

                Plaintiff              Civil Action No.

      v.                                Honorable

JONATHAN HEMINGWAY; A.W. FOURNELLE; CYNTHIA SUYDAM; A. VAUGHN; L. HUDDLESTON; LTS. LACHMAN; LTS. DICKMAN; RYAN LEA; C. ELLISON; CHAMBERS; UNKNOWN REGIONAL ADMINISTRATIVE REMEDY COORDINATOR; ROMERO-LICITA; UNKNOWN C/O.

                Defendants

## BIVEN'S COMPLAINT
## JURY DEMANDED

I. JURISDICTION.

1. This is a Civil action authorized by 28 USC § 1331 (Biven's suit) to redress the deprivation of rights under color of federal law, secured by the Constitution of the United States. The Court has jurisdiction under 28 USC § 1331 and § 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 USC § 2201 and § 2202. Plaintiff's claims for injunctive relief are authorized by 28 USC § 2283 and § 2284; Rule 65 of the Federal Rules of Civil Procedure.

2. The Eastern District of Michigan is an appropriate venue under 28 USC § 1391(b)(2) because it is where the events giving rise to this claim occurred.

1

## II. PLAINTIFF(S).

3. Plaintiff, Mr. Flournoy, Michael is and was at all times mentioned herein a prisoner of The United States of America in the custody of the Bureau of Prisons. He is currently confined in FCI Milan, in Milan, MI.

## III. DEFENDANT(S).

4. DEFENDANT: Jonathan Hemingway is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Warden. He is legally responsible for the operation of FCI MILAN and for the welfare of all the inmates in that prison; ensuring effective informal resolution procedures are in place; ensuring good faith attempts of grievance process in an orderly and timely manner by inmates and staff; ensuring grievance procedures don't operate to limit inmate access to formal filing of grievances; acknowledge receipt of grievance requests or appeals by returning receipt to inmate.

5. DEFENDANT: L. Huddleston is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Unit Manager. He is legally responsible as the administrative head of the general unit team; oversees all unit programs/activities; the chairperson of the team which comprises of the case manager and correctional counselor; responsible for review of team decisions and may chair Unit Discipline Committee (UDC); ordinarily present during initial classification and subsequent program review(s); ensuring inmate grievances

2

(receipts, extension notices, receipt disregard notices from institutions, regional and central office) are printed and delivered daily to inmates in their units.

6. DEFENDANT: A. Vaughn is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Unit Manager. He is legally responsible as the administrative head of the general unit; oversees all unit programs/activities; the chairperson of the team which comprises of the case manager and correctional counselor; responsible for review of team decisions and may chair Unit Discipline Committee (UDC); ordinarily present during initial classification and subsequent program review(s); ensuring that inmate grievances (receipts, extension notices, receipt disregard notices from institutions, regional and central office) are printed and delivered daily for inmates in their units.

7. DEFENDANT: A.W. Fournelle is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Assistant Warden of Programs. He is next in charge under the Warden; is over the "programs department" and legally responsible as supervisor of FCI MILAN's administrative programs and staff.

8. DEFENDANT: Cynthia Suydam is an employee of the BOP who at all times mentioned in this complaint, held the rank of Legal Assistant. Duties include monitoring administrative remedy program operations; ensuring staff has knowledge to operate grievance procedures; decides whether to reject submission

3

of grievances; clerical processing of grievances; accurately maintaining SENTRY index and generating SENTRY inmate notices; primary point of contact for Warden/Regional Director; assign each grievance for investigation to other than staff whom complaint is against and/or staff under their supervision.

9. DEFENDANT: Ryan Lea is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Case Manager. Lea is responsible for all case work services; prepares classification material, progress reports, release plans, correspondence and other materials relating to inmate commitment; serves as liaison between inmate, administration, and community.

10. DEFENDANT: C. Ellison is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Correctional Counselor. Ellison is responsible for providing counseling and guidance for inmates of the unit in areas of institutional adjustment, personal difficulties and plans for the future; plays leading role in segments of unit programs relating to inmate activities; may conduct counseling groups in his unit and/or groups open to general population; providing "appropriate form(s)" for grievance to inmate; logging the grievance in at the time inmate gives grievance to him.

11. DEFENDANT: Lts. Lachman is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Lieutenant, and was assigned to

4

FCI MILAN. Lachman is responsible for various aspects of institutional security assigned to him by the Captain.

12. DEFENDANT: Lts. Dickman is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Lieutenant, and was assigned to FCI MILAN. Dickman is responsible for various aspects of institutional security assigned to him by the Captain.

13. DEFENDANT: Chambers is a correctional officer of the BOP who at all times mentioned in this complaint, held an unknown rank relating to the R & D Office of FCI MILAN. Chambers' responsibilities are unknown to Plaintiff at the time of this complaint but will become known throughout the discovery of this suit.

14. DEFENDANT: Unknown Regional Administrative Remedy Coordinator is an employee of the BOP who at all times mentioned in this complaint, held the rank of Administrative Remedy Coordinator. Responsible for monitoring grievance program is operational at location; ensure appropriate staff has knowledge needed to operate grievance procedure; responsible for signing any rejection notices; ensuring accuracy of SENTRY entries; serves as primary point of contact for Warden/Regional Director in discussions of grievances appealed to higher levels.

15. DEFENDANT: Romero-Licita is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Unit Secretary. Romero-Licita

5

is responsible for performing clerical and administrative duties, to include preparation of release paperwork.

16. DEFENDANT: Unknown C/O is a correctional officer of the BOP who at all times mentioned in this complaint, held the rank of Correctional Officer. Unknown C/O has direct responsibility for daily supervision of inmates; the enforcement of rules, regulations, safety, security, and sanitation responsibilities in the unit; in regular contact with inmates and encouraged to establish professional relationships as long as such interaction does not interfere with their primary duties; controls movement in and out of unit and conduct regular searches for contraband.

17. Each defendant is sued individually and in his official capacity. At all times mentioned in this complaint each defendant acted under the color of federal law.

IV. FACTS.

18. This is a "BIVEN'S suit" that complains of deprivation of rights under the color of federal law. Plaintiff, Mr. Flournoy, Michael, sought the assistance of His unit team in correcting His inmate custody score after successfully vacating an unconstitutional conviction that was used in His 'criminal history'. This vacated case changed Plaintiff's criminal history score from 9 to 6, which in turn changed His total custody score from 13 to 11 points.

Mr. Flournoy's custody level changed from "low", which is consistent with FCI MILAN's security level, to "minimum" which under BOP policy's normal

6

process, requires transfer. To secure this result, Plaintiff first requested Ryan Lea, His case manager to give Him an "exceptional case review". When Lea failed to act, Plaintiff went to Lea's supervisor at that time (Unit Manager Stoner) who reviewed the policy and process, then compelled Lea to make the correction to the score (Ex.2A/2B). After Lea corrected Mr. Flournoy's score, He requested a transfer to a minimum-security BOP Institution, consistent with policy.

On 12/03/19, Mr. Flournoy was threatened by Ryan Lea, His case manager at FCI MILAN, to have His security level increased if He "pressed the issue" for minimum security transfer (Ex.2). Upon receiving the threat, Plaintiff sought to exercise His right to file a grievance to appeal Lea's decision not to transfer Mr. Flournoy in accord with BOP policy (3:20-CV-10496 ECF No. 1 PAGEID 6-113) and to report the threat. FCI MILAN's practice is to have inmates receive the grievance form from the unit counselor.

19. On the same day Plaintiff was threatened by Lea, He requested a grievance form from Counselor Ellison. Ellison demanded to be told in detail what the form was intended to be used for. After Ellison learned Mr. Flournoy was fixed on filing allegations against Lea for staff misconduct and that He was aware of policy requirements, Ellison refused to provide the form. Plaintiff then requested other inmates for forms and received them (Ex.1)

20. Using the "sensitive submission" procedure from the Administrative Remedy Program policy (Ex.21), Plaintiff submitted two complaints to the North Central Regional Office expressing His concerns for retaliation from Lea and Ellison, who both gave separate reprisals (Ex.1 and 2). A "reprisal" is any action or threat of action against anyone for the good faith participation in the grievance procedure.

21. On 12/18/19, an unknown regional admin. remedy coordinator rejected Plaintiff's complaints for retaliation and threats as sensitive, but did not return them according to prison policy, which does not return complaints 'too sensitive to be made known at institution' (Ex.3,4). Regional told Him to file His complaint at FCI MILAN. Ellison again attempted to talk Plaintiff out of filing the complaints against he and Lea.

22. The Regional Coordinator made FCI MILAN aware of the sensitive complaints Plaintiff filed at the regional office. On or about 01/02/20, Lea, Huddleston, who was Plaintiff's unit manager at the time of this act, and Hemingway fulfilled Lea's threat to increase Mr. Flournoy's security level, in retaliation for making His complaint known outside of FCI MILAN to the regional office (Ex.5). This application for transfer/management variable contained knowingly false information with a statement that the information was "correct and current". Lea gave Plaintiff an unlawful team review on 1/06/20, four days after he allegedly created the 409 form. This review was unlawful because it required at minimum,

8

the unit manager to be present, while Lea was the only person there. Lea gave Mr. Flournoy an 'individualized reentry plan-program review (inmate copy) (Ex.18B) reflecting His progress over the year of incarceration in FCI MILAN. This report did not indicate any of the conclusions Lea reached in the 409 (Ex.5). There was no indication that Plaintiff had not 'properly adjusted' as Lea gave all positive reviews (Ex.18B). Defendant submitted two government documents so different from each other that both could not be true.

Upon information and belief, a review of Lea's case file(s) will show he did not change his way of processing minorities and Muslim's custody until the government represented Hemingway in litigating the mandamus.

23. After a 21-day delay in processing by Ellison, on 01/11/20, Plaintiff re-submitted His 12/11/19 Regional complaint to Hemingway against both Lea and Ellison (Ex.6). Ellison called Mr. Flournoy into his office questioning Him about the complaint in an intimidating manner, again pressing Him to stop the complaints. An email was sent to Hemingway and Suydam on 01/23/20 requesting a stop be made against such harassment and that the incident be reported/investigated by "OIA/OIG for the proper investigation". (Ex.7).

24. Plaintiff had a right to receive classification data from Lea (Ex.35). On 2/23/20, Plaintiff requested and was denied basic case manager services in retaliation, by Lea and told not to ask him for anything until "07/04/20" (Ex.8).

9

25. After 30 days of informal requests to Hemingway, Huddleston, Lea, and Ellison; being denied services; getting the run-around; and being harassed through increase of "not-so-random cube searches", Plaintiff filed a "Writ of Mandamus" in the Eastern District of Michigan (Flournoy v Hemingway 3:20-cv-10946). Policy allowed 20 days for Hemingway to respond to Plaintiff's grievance. 47 days passed without Hemingway or Suydam providing a way for Mr. Flournoy to access the grievance process; nor did they respond to the emailed complaint (Ex.7).

26. A day after Plaintiff filed the mandamus in court and served Hemingway, Hemingway allegedly replied to Plaintiff's grievance. The reply was not given to Plaintiff by Ellison until 3/5/20. (Ex.9). Hemingway's response validated the unauthorized retaliation, acknowledged staff misconduct, and fueled more retaliation.

27. On 3/03/20, Huddleston gave Plaintiff the documentation Lea refused to provide in Ex. 8, after it was too late to be used to support the mandamus (Ex.10). This form informed Plaintiff for the first time that His security level was increased, the date it was increased, and provided cause to review the application for "management variable", for the reason it was increased. Mr. Flournoy requested a copy of the "409 Form" from Huddleston as proof for His litigation and was denied; then told to "ask Lea for it".

10

28. Plaintiff had a right to request and receive, disclosable classification data from His central file for civil litigation (Ex.35). After informally requesting the 409 form from Lea and being denied, on 03/04/20 Plaintiff sought the document from FCI MILAN's records office. C/O Chambers of the records office also denied Plaintiff and told Him to "ask Lea for the form and tell him I (Chambers) told you to ask for it" (Ex.11). Plaintiff was denied the right to receive disclosable classification data (409 form) from all defendants after informing them it was needed for civil litigation against Hemingway.

29. Ellison and Lea gave Plaintiff an incident report for "lying or providing a false statement" after He requested the form (Ex.12). Denying this form prevented Plaintiff from seeking summary judgment in the civil litigation. (The 409 [Ex.5] was not given to Plaintiff by Huddleston until 03/24/20).

30. On 03/04/20, Hemingway was made aware that Ellison's intimidation and threats had not stopped, and an informal request was made to be removed from Ellison's unit to be safe from further retaliation (Ex.13). Hemingway did not reply or act, and his silence authorized more misconduct. Hemingway did not provide any protection to Plaintiff after being made aware of staff misconduct, thereby permitting/promoting the denial of the right to file grievances against prison officials, and retaliation.

11

31. On 03/09/20, Mr. Flournoy filed an appeal with the regional office to inform them that the concerns expressed for retaliation were manifested by and through a management variable, incident report, harassment, and threats which Plaintiff made regional office aware of in Ex. 1 and 2 (Ex.14). The unknown Regional Administrative Remedy Coordinator rejected Plaintiff's evidence of retaliation and appeal against regulation (Ex.47).

32. On 03/20/20, Mr. Flournoy appealed in person to Fournelle, to receive a copy of the disclosable 409 form for litigation (Ex.15). Plaintiff followed up with a detailed email of the conspiracy to deprive Him of rights under color of federal law. Fournelle compelled Huddleston to release the 409 form four days after the email follow-up and 60 days after the mandamus was filed (Ex.5). As a direct result of suppressing the 409 form, Plaintiff was not able to use it in support of the mandamus or as evidence of retaliation against Ellison and Lea's incident report (Ex.12).

33. Hemingway allegedly denied Petitioner's appeal of the incident report the same day the 409 form was released (3/24/20). Ellison gave Mr. Flournoy Hemingway's response seven days after it was allegedly created, on 3/31/20 (Ex.16).

34. On 3/27/20, Mr. Flournoy complained to Suydam, that her rejection of His grievance was inconsistent with what policy allowed. Suydam's actions placed a restraint on Plaintiff's ability to file complaints for staff misconduct. Suydam used

12

Ellison as an institutional thug to scare Plaintiff into dropping His complaints (Ex.17). Suydam was requested to submit Mr. Flournoy's grievance according to policy. Defendant's actions of bogus denials and intimidation were aimed at deterring Plaintiff from engaging in His protected First and Fifth amendment conduct.

35. Fournelle was forwarded the 'Suydam email' on 3/27/20 and made aware that Plaintiff's right to file grievance against prison officials was being denied (Ex.17).

36. On 3/27/20, Plaintiff filed another formal complaint to Hemingway detailing the facts suppressed by delaying production of the 409 form (Ex.5), providing evidence that Lea knowingly retaliated against Plaintiff when he submitted the 409 form for Hemingway to sign (Ex.18). This complaint provided a way for Hemingway to detach himself from the retaliation and denial of right to file grievance. Hemingway refused to disassociate himself from these actions.

37. Because Mr. Flournoy was being denied the grievance forms and processing in accordance with policy, the only means of making His complaints known was through the inmate email system.

38. After Fournelle and Suydan refused to respond to Plaintiff's requests for access to the grievance program (Ex.17), Hemingway responded to the forwarded email, telling Mr. Flournoy to "address this issue with your unit team". (Ex.19).

13

Hemingway did not intend to allow Plaintiff's complaints to be made public or allow Him to establish support for His litigation in the mandamus.

39. Plaintiff has a right to have His grievance acknowledged and a receipt returned (Ex.21). On 4/08/20, Fournelle was requested to cause notice of receipt of administrative remedy to Plaintiff to be issued(Ex.20). Vaughn is the unit manager responsible for this task (Ex.21). The notice of receipt is used to count the days for processing the grievance. Hemingway's authorization of withholding this receipt prevents Plaintiff from determining when the time for response has expired to move to the next stage without the response.

40. On 4/10/20, Hemingway refused to acknowledge receipt of grievance by returning a receipt to Plaintiff. Defendant told Plaintiff by email to "speak with your counselor about the BP-9 you submitted" instead of Vaughn (unit manager), after four months of complaining that Ellison was refusing to provide Mr. Flournoy with anything other than intimidation and threats (Ex.22).

41. As a direct result of Plaintiff's informal resolution attempts and determination to establish a record of this deprivation of rights under color of federal law, and threats against a litigant in a civil cause, on 4/29/20 Ellison sought to have Mr. Flournoy removed from the unit for possession of contraband. An object was planted in Plaintiff's cell by an inmate who enjoyed an openly inappropriate relationship with Ellison. After the 24-hour time frame expired for Plaintiff to

14

receive an incident report, Plaintiff made Hemingway aware of the 'botched hit' that caused Plaintiff to be strip searched in front of other inmates, and have his cell trashed (Ex.23).

Unknown C/O, under the direction of Ellison's orders, woke Plaintiff from His sleep in His 'open cube space' shared with up to 60 inmates, pat searched Him, then requested to see the inside of His shorts, causing Mr. Flournoy to drop His short/under-shorts to the floor, turn and cough. Defendant then had Plaintiff sit in Ellison's office while he trashed Mr. Flournoy's cube. Secretary Romero-Licata joined defendant in trashing the cube after she located Kevin Gardner, Plaintiff's bunk mate, who was not in the cube at the time of the strip-search, to also sit in Ellison's office. Both inmates were taken to the lieutenant's office by SIS officers, not limited to Lts. Dickman and strip searched, then sent back to F-unit after the cube was cleared (Ex.23).

42. To establish the fact that Hemingway's acquiescence to the many attempts to informally resolve complaints of retaliation and denial of right to file grievance, on 5/12/20 Mr. Flournoy stopped trying to avoid His unit team and moved to file three grievances with Ellison and was denied. The first BP-8 that was given to Ellison was 'rejected' moments after he read it and became aware it was about his 'disorderly conduct' (Ex.24). Ellison attempted to talk Plaintiff out of His complaint by suggesting that "someone called him and told him the complaint had

15

more than one issue". Ellison would not tell Him who he spoke with. When Plaintiff tried to report him to Vaughn, Ellison stopped Plaintiff from entering Vaughn's office by going into the office first - then exiting telling Plaintiff, "he can't talk to you now".

43. That night Hemingway received email(s) detailing these denials and notice that Plaintiff would be attempting to refile these grievances on 5/13/20. (Ex's 24, 25, 26, 27). Plaintiff had an undisputed First Amendment right to file grievance against prison officials.

44. On 5/13/20, it became clear that defendants had no intentions on granting Mr. Flournoy meaningful access to the courts or due process of grievance procedure. Plaintiff attempted to resubmit the complaints in Ex.24-27 by first requesting four BP-8 forms. In response, Ellison denied Plaintiff the four forms and told Him He had to "do one at a time." Plaintiff then resubmitted the same Ex.24 from 5/12/20 that was "voided" the day before without change, then requested another form.

Plaintiff received the second form, left his office to complete it. Before He could complete the second form Ellison was calling Plaintiff back into his office to confront Him about the contents thereof. Plaintiff did not stop filling out the form while Ellison "huffed and puffed" trying to intimidate Him (Ex.28). Plaintiff submitted the second complaint and requested the third BP-8.

45. Plaintiff was called back into Ellison's office and confronted again about the second complaint. Mr. Flournoy again continued to fill out the third form while Ellison went on a rant calling Plaintiff a "rat" and among other insults, cursing Him stating "you are coming back to jail after your release!". (Ex.29,31). Plaintiff submitted the third BP-8 and requested another form and was told to "get away from him!".

46. Plaintiff had another form in His papers that Ellison had given Him instead of the BP-9 form He requested in the past. This form was used to fill out the last complaint He was not able to submit. After this last attempt, Plaintiff made Hemingway aware of the events that took place including, but not limited to, the last complaint that was not able to be submitted (Ex.30).

47. At the time of this deprivation of rights, FCI MILAN had an "OIG/COVID" link as a staff request email option. Mr. Flournoy filed a complaint with this link alleging misconduct against Ellison. This option did not give Plaintiff a choice to print the email.

48. Moments after submitting the complaint on the OIG link, Mr. Flournoy was called into the lieutenant's office and told that He "was not allowed to go into Ellison's office, speak to him or have contact with him, or He would be placed in SHU and given a max shipment". Plaintiff was told by Lts. Dickman and Lts.

17

Lachman that He had to sign the "Notice to Inmate to Cease Stalking Behavior" form (Ex.32).

49. After reading the form under the threat of being placed in Special Housing Unit (SHU), Mr. Flournoy signed the form, received a copy and questioned both lieutenants as to "how would they know if Ellison was lying about if we had contact?" Both responded they "would investigate it before taking action; but stay out of his office!". Plaintiff asked if He could speak, Lachman stated, "[he] didn't want to hear anything!"

50. This notice of stalking form had a "Department of Justice, Federal Bureau of Prisons" seal on the top left corner. It alleges that Mr. Flournoy's "stalking behavior" was that He has "made numerous allegations of various severity against counselor Ellison through the administrative remedy process constantly accusing counselor Ellison of abuse of power and demanding that counselor Ellison be "investigate[d], removed from office and prosecuted". The form goes on to state that, "Ellison has asked inmate/Flournoy several times to stop this behavior and feels that these actions by inmate Flournoy have turned the situation into a hostile environment for him (Ellison)".

Plaintiff had a right to file complaints against Ellison and Lea. Defendants did not allege claims in grievances were false.

18

51. On 5/14/20, Plaintiff emailed Vaughn, Fournelle, and Hemingway seeking to have His cell changed to be safe from the threat of Ellison's retaliation (ex.34). Hemingway responded on 5/14/20, 12:27 pm, "first address your question with your unit manager' (Ex.36). Plaintiff's cell was never changed, and He continued with His civil litigation under the threat of defendants listed herein.

52. On 6/01/20, Mr. Flournoy's daughter emailed Hemingway complaining about the "stalking notice" (Ex.33). Hemingway was requested to provide "the ruling that states use of administrative remedy program, can be deemed as stalking, and ultimately a punishable action." This request, as well as the complaints of retaliation have not been answered/addressed to this day.

53. On 6/10/20, Plaintiff filed with the District Court of Eastern Michigan, a motion to cease retaliation alleging many of the facts and exhibits relied on for this Biven's claim (3:20-CV-10496-RHC-MJH, ECF No.4). Defendant Hemingway did not object, dispute, or deny any of the allegations of retaliation, threats, or deprivation of rights under color of federal law.

54. On 7/2/20, Mr. Flournoy received two administrative remedy responses dated 5/21/20 and 5/27/20. Plaintiff complained to Fournelle, Vaughn and Hemingway about not receiving the response within time to reply to them. The email (Ex.37) that was forwarded to defendants complained that Ellison received the response within the 30-day time frame Plaintiff had to reply, held on to them until the time

had expired, then gave them to Vaughn to give to Plaintiff, without any written excuse for delay.

Hemingway, Fournelle or Vaughn did not provide written cause for delay, and did not rescind the notice of stalking, ordering Plaintiff to not use the grievance process.

55. On 7/23/20, Plaintiff requested an "unscheduled review" from Vaughn to correct His custody score. Plaintiff discovered through the mandamus litigation that Hemingway, Vaughn, and Lea changed His custody score against policy, to give Him a higher score than policy allowed, after the mandamus was filed. This request was done on a paper inmate request form. After more than 30 days, Vaughn did not reply to the paper request.

56. On 8/31/20, Mr. Flournoy followed-up by email. On 9/2/20, Vaughn replied and scheduled a review. On 9/9/20, Vaughn, Lea, and Ellison held the team review but refused to make any corrections or give Plaintiff any "appealable", written reason why they would not comply with policy's guidance on how to score Him. Vaughn demanded Plaintiff show him "something in writing that said he had to give written reply." Plaintiff could not produce the policy in the review but has since then found it (3:20-CV-10496 ECF No. 1 PAGEID 6-113). This retaliatory action prevented Plaintiff from exercising His right to file a grievance and appeal. Plaintiff sent another email to Vaughn detailing what took place in the team

20

review, requesting Vaughn to correct any misstatements. Vaughn did not make any corrections. (Ex.38).

57. Because Hemingway did not lift the order for Flournoy to 'not' file grievances, on 09/19/20 He filed another "sensitive issue" complaint with the regional office. Plaintiff included a copy of the notice of stalking order (Ex.32) and complained of a conspiracy to keep Mr. Flournoy housed in higher security in retaliation for making complaints 'outside' of FCI MILAN, not limited to the district court litigation (Ex.40).

58. On 10/01/20, Plaintiff followed up with Vaughn and Hemingway about His "lesser security transfer request", attempting to get a statement that could provide an appealable reason for denial. Defendants Vaughn and Hemingway refused to provide any reason or response, thus denying Him the same due process other inmates are afforded to appeal any unit team decision (Ex.41).

59. On 10/28/20, Plaintiff received another rejection of 'sensitive' submission from unknown defendant, 'administrative remedy coordinator', of the regional office (Ex. 42, 43). The rejection was dated 10/02/20 and asked Mr. Flournoy to re-submit the complaint to Hemingway. It must be noted that the order denying Plaintiff further use of grievance process under threat of stalking charge was attached to the sensitive complaint (Ex.40-1). The grievance was rejected as "not

sensitive", but again "returned" as too sensitive to return without the complaint forms attached (Ex.42)

60. Plaintiff has a right to file grievances against prison officials without retaliation or obstruction of process (Ex.34). On 10/28/20 at 3:59 pm, Plaintiff sent email to Hemingway requesting again to be "provided with a way to file complaints against staff" and informing him of, but not limited to, that He "recently filed a sensitive BP-9 with the regional office and they told [him] to file it here. "[Plaintiff] know[s] for sure that the complaint, which is against the unit manager and case manager will not be submitted to you if [He] give it to them." Hemingway was again made known of these facts and requests, and refused to take any action; rescind the order denying access to administrative remedy process; or stop the retaliation against Plaintiff (Ex.44).

61. On 10/30/20, Vaughn responded to Plaintiff's 10/01/20 follow-up email for relief against partial treatment that was forwarded to Hemingway in Ex.45. It should be noted at this stage that Ex.45 was a follow-up to Ex.38, which asked defendants Vaughn and Hemingway to correct Plaintiff's custody score according to statutory/prison policy's guidance, which Mr. Flournoy also alleged was changed in retaliation. Prior to this, on 7/14/20, Lea filed a declaration in federal court stating Plaintiff's custody score would be reviewed on "July 1, 2020". Plaintiff requested the new review because, 1. Vaughn did not appear for the

22

7/1/20 team review, causing Plaintiff to refuse the review with only Lea and Ellison, and 2. the custody score was not changed. Vaughn's reply that the score would not be reviewed again until 12 months, is inconsistent with the declaration Lea swore to in the civil litigation (3:20-cv-10496; ECF 7-2 page Id 187).

62. Vaughn failed to provide any reason for refusing to correct Mr. Flournoy's request in the email or in person after receipt of the email. It was understood and established that the improper count of Plaintiff's score made Him "not eligible for lesser security transfer". Vaughn and Hemingway prevented Mr. Flournoy from filing a grievance by, 1. not responding within 20 days after cause of grievance, and, 2. by not giving any reason for not making corrections to the custody score that would indicate a deviation from statute/policy (Ex.21).

63. On 11/10/20, Hemingway received notice through forwarded email chain of Vaughn's response (Ex.46). This notice complained of being denied "basic unit team services"; being denied "the means to petition for redress of grievance - before filing complaint in court"; "to not be retaliated against"; informing Hemingway that Mr. Flournoy had concluded His 180+ day attempt "to access the administrative remedy process"; and notice of seeking "relief from outside this FCI."

Hemingway has not objected or responded to Plaintiff's informal attempts to resolve His simple request.

23

## V. EXHAUSTION OF LEGAL REMEDIES.

64. Plaintiff, Mr. Flournoy, Michael used the prisoner informal/formal grievance procedure available at FCI MILAN to try and solve the problems listed herein. Defendants named and unknown at the time of this complaint made the administrative remedy process unavailable by thwarting Plaintiff from taking advantage of the grievance process through machination, misrepresentation, threats, and intimidation. Accessing the grievance procedure is a right Plaintiff has that is widely promulgated in BOP Policy and government regulation. Defendants knew and understood their behavior violated Plaintiff, Mr. Flournoy's rights. These allegations are evidenced by the attached exhibits in "III. FACTS" above, and in the record of the Writ of Mandamus.

## V. LEGAL CLAIMS.

65. Count 1. First Amendment Retaliation.

Defendants: Jonathan Hemingway; L. Huddleston; A.W. Fournelle; Cynthia Suydam; Ryan Lea; C. Ellison; Lachman; Dickman; A. Vaughn; Romera-Licita; Unknown C/O.

a. Plaintiff at all times engaged in conduct protected by the First Amendment of the U. S. Constitution, to file grievances against prison officials on His own behalf. Defendants knowingly took adverse actions against Plaintiff "after" He filed a complaint outside of FCI MILAN to the regional office. The threats detailed

24

in Plaintiff's 12/11/19 complaint were fulfilled by defendants "after" the regional office made defendants aware of Plaintiff's complaint(s); and again "after" the mandamus was served on Hemingway and filed in federal court on 2/26/20. Mr. Flournoy did not receive any threats or incident reports before filing the grievance(s) and mandamus against prison officials during the year He was housed in FCI MILAN. These actions reflect a causal connection and subjective motivation.

66. Count 2. First Amendment Denial of Right to File Grievance against Prison Officials.

Defendants: Jonathan Hemingway; A.W. Fournelle; A. Vaughn; Ryan Lea; C. Ellison.

a. Plaintiff at all times engaged in conduct protected by the First Amendment of the U. S. Constitution when He requested grievance forms and was denied; when He requested means to file forms other than giving them to the persons whom complaints were against and was refused; and when He sought judicial intervention to be afforded access and due-process of the grievance program. Defendants knowingly obstructed the normal process for filing grievances to prevent Plaintiff from timely filing meaningful complaints. Defendants also sought to prevent Plaintiff from prevailing before the District Court of Eastern Michigan

25

by using the desired result of not completing the grievance process as a defense in the mandamus litigation.

67. Count 3. Fifth Amendment Denial of Due Process.

Defendants: Cynthia Suydam; Jonathan Hemingway; Huddleston; Ryan Lea; C. Ellison; A. Vaughn; Unknown Regional Administrative Remedy Coordinator; Chambers; Lachman; Dickman.

   a. Plaintiff at all times engaged in conduct protected by the Fifth Amendment of the U. S. Constitution when He requested procedural and substantive due process of prison custody classification and the grievance process. Defendants knowingly circumvented congressional/agency guidance to prevent Plaintiff from receiving the same services, opportunities, and processing as other inmates.

68. Count 4. First Amendment Threats/Campaign of Harrassment.

Defendants: Jonathan Hemingway; Vaughn; A.W. Fournelle; Ryan Lea; C. Ellison; Lachman; Dickman.

   a. Plaintiff at all times engaged in conduct protected by the First Amendment of the U. S. Constitution to access the court and file grievances against prison officials on His own behalf. Defendants knowingly fulfilled threats to keep claimant housed in a higher security custody BOP institution if he continued to press unit team to process him for minimum security transfer after Plaintiff filed a

26

grievance with Regional Office; and afterward knowingly threatened Plaintiff with false stalking charges if He continued to seek investigations and removal of disorderly staff. Defendants took these steps after Plaintiff used a common law remedy for making grievance process unavailable, to file a Writ of Mandamus in federal court. Defendants also maintained threats, misrepresentation, and intimidation as their response to Mr. Flournoy's every request, surpassing that which would deter the ordinary inmate from proceeding. These threats were knowingly made to a party of civil litigation in violation of 18 USC § 1512 (a)(2), a criminal act.

VI. PRAYER FOR RELIEF.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

69. A declaration that the acts and omissions described herein violated Plaintiff's rights under the U.S. Constitution and laws of the United States.

70. A preliminary and permanent injunction ordering defendants to cease retaliation against inmates exercising right to file grievances against prison officials and provide an impartial process for filings.

71. Compensatory damages in the amount of $25,000.00 USC against each defendant, jointly and severally.

72. Punitive damages in the amount of $60,000.00 USC against each defendant;

based on the pattern of abuse and the threat of more abuse in the near future.

73. A jury trial on all issues triable by jury.

74. Plaintiff's cost in this suit.

75. Any additional relief this Court deems just, proper, and equitable.

Date 11/24/2020

Respectfully submitted.

VERIFICATION

I have read the following complaint and hereby verify that the matters alleged

therein are true, except as to matters alleged on information and belief, and as to

those, I believe them to be true. I certify under penalty of perjury that the forgoing

is true and correct.

Executed at Milan Michigan on 11/24/2020

/s/:Mr. Flournoy, Michael