**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

MICHAEL FLOURNOY,

     Plaintiff,

v.                                                                    Case No. 20-13130

JONATHAN HEMINGWAY,
*et al*.,

     Defendants.

_____/

**OPINION AND ORDER SUMMARILY DISMISSING THE COMPLAINT, DENYING
PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION, TEMPORARY
RESTRAINING ORDER, AND ACCESS TO ELECTRONIC FILING, AND
TERMINATING AS MOOT DEFENDANTS' MOTION TO DISMISS**

This is a federal prisoner's *pro se* civil rights action pursuant to *Bivens v. Six
Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff Michael Flournoy, who
has paid the filing fee in full, is confined at the Milan Federal Correctional Institution in
Milan, Michigan. Plaintiff claims the warden and other corrections staff at FCI Milan
retaliated against him when he requested the correction of his security level
classification and transfer to a minimum security federal correctional facility, and that the
retaliation continued in response to his grievances and complaints. Plaintiff seeks a
declaratory judgment and injunctive relief, and compensatory and punitive damages.

Plaintiff has moved for a preliminary injunction or temporary restraining order
(ECF Nos. 5, 10), as well as access to the court's electronic filing system for *pro se*
litigators. (ECF Nos. 6, 9.) Defendants have filed a motion to dismiss. (ECF No. 11.)
Because Plaintiff failed to state a claim upon which relief may be granted, the complaint

will be dismissed and Plaintiff's motions will be denied. The court will terminate Defendants' motion to dismiss as moot.

## I.    BACKGROUND

The following facts are either alleged in Plaintiff's complaint or established in the judicial record. At the pleading stage, the court accepts Plaintiff's factual allegations as true but makes no overt finding as to truth or falsity. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017).

In November 2019, Plaintiff Michael Flournoy requested the recalculation of his security level classification to reflect a correction to his criminal history. (ECF No. 1, PageID.10-11, Complaint.) Plaintiff's custody level was reduced from "low" to "minimum," and he sought a transfer from FCI Milan to a lower level security facility. (*Id*.) When Plaintiff's requests were not met, he filed a mandamus complaint in this court against FCI Milan Warden Jonathan Hemingway. (Case No. 20-10496, ECF No. 1.) That case was dismissed on October 2, 2020. (Case No. 20-10496, ECF No. 34.)

In the current suit, Plaintiff alleges that while litigating the mandamus action, he suffered violations of his First Amendment rights in the form of retaliation, denial of his right to file grievances, and a campaign of harassment. He also contends that he was denied his right to due process under the Fifth Amendment. Plaintiff seeks both damages and injunctive relief. He names as defendants Warden Hemingway; Assistant Warden Fournelle; Cynthia Suydam, legal assistant; Unit Managers Vaughn and Huddleston; Lieutenants Lachman and Dickman; Case Manager Ryan Lea; Correctional Counselor C. Ellison; Chambers, a correctional officer of unknown rank; Unit Secretary

Romero-Licita; Unknown Regional Admin Remedy Coordinator; and an Unknown

Correctional Officer.

Following the reclassification of Plaintiff's security level and his request for

placement in a minimum-security facility, on December 3, 2019, Defendant Lea

allegedly threatened Plaintiff that Defendant Lea would increase Plaintiff's security level

if he insisted on the transfer. (ECF No. 1, PageID.11.) Plaintiff attempted to grieve Lea's

actions, but Defendant Ellison allegedly refused to provide Plaintiff with a grievance

form. (*Id*.) Plaintiff was able to obtain the forms from others and filed two complaints

through the Bureau of Prisons' ("BOP") "sensitive submission" grievance procedure. (*Id*.

at PageID.11-12.) Defendant Unknown Regional Administrative Remedy Coordinator

("Regional Coordinator") denied Plaintiff's grievances against Lea and Ellison. (*Id*. at

PageID.12.) The Regional Coordinator made FCI Milan aware of Plaintiff's "sensitive"

grievances, and instructed Plaintiff to file his complaint with FCI Milan directly. (*Id*.)

On January 2, 2020, Defendants Lea, Unit Manager Huddleston, and Warden

Hemingway obtained a change to Plaintiff's security classification that increased

Plaintiff's security level back to "low." (*Id*. at PageID.12) Plaintiff alleges that the change

was in retaliation for Plaintiff's complaints to the regional office and that the form

contained "knowingly false information." (*Id*.)

Plaintiff resubmitted his complaints against Defendants Lea and Ellison to

Hemingway. (*Id*.) On January 11, after that resubmission, Defendant Ellison allegedly

called Plaintiff to his office and attempted to intimidate Plaintiff into stopping further

complaints. (*Id*. at PageID.13.) On January 23, 2020, Plaintiff emailed Defendants

Hemingway and Suydam, complaining of harassment. (*Id*.) On February 23, Defendant

3

Lea, Plaintiff's case manager, told him not to ask for anything from him until his next review in July. (*Id.*)

Plaintiff filed the mandamus action on February 26, 2020, naming Hemingway as the sole defendant. In that action, he alleged that by keeping Plaintiff at FCI Milan, Defendant Hemingway was not complying with BOP policies. (Case No. 20-10496, ECF No. 1, PageID.2.) The complaint included allegations of retaliation for his efforts to be transferred. (*Id.* at PageID.3.)

In the current suit, Plaintiff alleges that after the mandamus action was filed, Defendants interfered with his ability to litigate that case by denying him documents to which he was entitled or providing the documents too late to use in the mandamus action. (Case No. 20-13130, ECF No. 1, PageID.14-15.) According to Plaintiff, in one instance when he sought needed documentation, Defendants Ellison and Lea accused him of lying and issued a disciplinary report for Plaintiff's behavior. (*Id.* at PageID.15.) Plaintiff contends that in this time period, Defendant Hemingway either did not respond to his complaints or answered in a manner that "validated" and "fueled" further retaliation. (*Id.* at PageID.14-15.)

Plaintiff alleges that on April 29, 2020, in retaliation for grievances he filed against Defendants Ellison and Lea, Ellison caused another inmate to plant contraband in Plaintiff's cell. (*Id.* at PageID.18-19; ECF No. 1-2, PageID.96.) This resulted in Plaintiff being strip-searched and his cell "trashed" by Defendants "Unknown C/O," Romero-Licita, and Dickman. (*Id.* at PageID.19.) Nothing was found, and Plaintiff received no disciplinary consequences. Plaintiff emailed Defendant Hemingway about the incident. (ECF No. 1-2, PageID.96.)

Plaintiff emailed Defendant Hemingway again at least four times on May 12, 2020, complaining about Defendant Ellison. (ECF No. 1-2, PageID.97-100.) On May 13, Plaintiff filed grievances against Defendant Ellison in front of him, despite Ellison's attempts at intimidation and refusal to accept one of the grievances. (ECF No. 1, PageID.20-21.) Plaintiff emailed Defendant Hemingway another four times on May 13, after he submitted the complaints. (ECF No. 1-2, PageID.101-02; ECF No. 1-3, PageID.105-06.) In his emails, Plaintiff repeatedly asserted Defendant Ellison should be removed from his position.

On May 13, after Plaintiff had filed and emailed his complaints about Defendant Ellison, Defendants Lt. Dickman and Lt. Lachman allegedly instructed Plaintiff not to go near Ellison or Plaintiff would be sent to segregation. (ECF No. 1, at PageID.21.) Defendant Ellison had accused Plaintiff of creating a hostile environment for him. (*Id.* at PageID.22.) Plaintiff was directed by the lieutenants to sign a form acknowledging receipt of the letter describing the harassment and warning that he could receive an incident report for stalking if he did not refrain from future such behavior. (*Id.* at PageID.21-22; ECF No. 1-3, PageID.107.) Plaintiff contends this further obstructed his ability to complain about the misconduct of prison officials. On May 14, 2020, Plaintiff emailed Defendant Hemingway again, requesting a cell move as a result of the stalking claim. (ECF No. 1-4, PageID.132.)

Plaintiff complained to Defendants Hemingway, Fournelle, and Vaughn about not receiving responses to his grievances in time for him to respond to them. (ECF No. 1, PageID.23-24.) He states those Defendants ordered Plaintiff not to use the grievance process. (*Id.* at PageID.24.) Throughout the time period that Plaintiff states he was

unable to file grievances, he communicated via email to Defendants Hemingway, Fournelle, and Suydam, among others. He also submitted complaints to the Regional Coordinator.

## II.   STANDARD

Under the Prison Litigation Reform Act ("PLRA"), the court is required to dismiss a prisoner's complaint if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010) (citing 28 U.S.C. §§ 1915(e), 1915A(b); 42 U.S.C. § 1997e(c)). The screening requirement extends to all prisoner civil cases, whether fee-paid or *in forma pauperis*, "as the statute does not differentiate between civil actions brought by prisoners." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997). A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is "subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

When evaluating a complaint under PLRA standards, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill*, 878 F.3d at 203 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Pleadings filed by *pro se* litigants are "'to be liberally construed,' and 'a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(citing *Estelle v. Gamble*, 429 U.S.97, 106 (1976)).

A complaint must set forth "a short and plain statement of the claim showing that

the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ.

P. 8(a)(2), (3). "[D]etailed allegations" are not necessary, but under Rule 8(a) the

pleading must "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41,

47 (1957)). In addition, the "[f]actual allegations must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." *Id*. (footnote and citations omitted).

While *Bivens* addresses the actions of federal defendants and § 1983, those of

state defendants, courts "review *Bivens* and § 1983 actions under the same legal

principles[.]" *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). Under either, the

prisoner must prove two elements: "(1) that he . . . was deprived of a right secured by

the Constitution or laws of the United States; and (2) that the deprivation was caused by

a person acting under color of law." *Id*. The plaintiff must establish the liability of each

individual defendant by that person's own conduct: "Because vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution."

*Iqbal*, 556 U.S. at 676.

### III.    DISCUSSION

### A.  Cause of Action Under *Bivens*

Plaintiff brings the instant action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 397 (1971). In the complaint, he states without qualification that "[t]his is a *Bivens* suit." (ECF No. 1, PageID.10.) *Bivens* created an implied right of action under the Fourth Amendment against federal narcotics agents, without the presence of a federal statute explicitly creating a cause of action. *Id.* The Supreme Court decided *Bivens* in 1971, and between 1979 and 1980, it recognized an implied right of action under the Constitution in two additional contexts: 1) under the Fifth Amendment for sex discrimination in public employment; and 2) under the Eighth Amendment for federal prisoners for deliberate indifference to medical needs. *See Minneci v. Pollard*, 565 U.S. 118, 124 (2012) (citing *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980)). Since those decisions in the 1970s and 1980s, "[a]nd for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). As the Court explained in *Ziglar v. Abbasi*:

> Given the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the Bivens remedy is now a "disfavored" judicial activity. [*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)]. This is in accord with the Court's observation that it has "consistently refused to extend Bivens to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001).
>
> . . .
>
> For example, the Court declined to create an implied damages remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas*, 462 U.S. 367, 390, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); a race-discrimination suit against military officers, *Chappell v. Wallace*,

462 U.S. 296, 297, 304–305, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671–672, 683–684, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473–474, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); an Eighth Amendment suit against a private prison operator, *Malesko*, supra, at 63, 122 S.Ct. 515; a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007); and an Eighth Amendment suit against prison guards at a private prison, [*Minneci*, 565 U.S. at 120].

137 S. Ct. 1843, 1857 (2017).

Beyond the three categories of *Bivens* actions previously established by the Supreme Court, *Minneci*, 565 U.S. at 124, the Sixth Circuit has recognized that the application of *Bivens* to new contexts is exceedingly limited, if not completely foreclosed:

Subsequent developments leave [*Bivens* plaintiffs] with a forbidding hill to climb. What started out as a presumption in favor of implied rights of action has become a firm presumption against them.

. . .

The Court's actions over the last four decades match its words. Most telling of all, it has rejected extensions of *Bivens* to claims that involve constitutional rights that *Bivens* already reaches. *Carlson*, for example, authorized a *Bivens* action for an Eighth Amendment claim of deliberate indifference to an inmate's medical needs. 446 U.S. at 16–18, 100 S.Ct. 1468. But *Minneci v. Pollard* rejected a deliberate-indifference claim in the context of a privately operated prison, even if the Eighth Amendment otherwise applied there. [565 U.S. at 121, 131]. *Bivens* itself involved a Fourth Amendment seizure. 403 U.S. at 389–90, 91 S.Ct. 1999. But just five months ago, *Hernandez v. Mesa* rejected an invitation to innovate a similar remedy for a Fourth Amendment claim arising from a cross-border shooting. [140 S. Ct. at 744, 750].

*Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020).

9

The Sixth Circuit has rejected a federal prisoner's attempt to bring a *Bivens* action under the First Amendment, noting that the Supreme Court "has never recognized a Bivens action for any First Amendment right." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)). In addition, the Sixth Circuit refused to recognize a new *Bivens* action for federal prisoners suing under the Fifth Amendment's Due Process Clause. *Harris v. FBOP*, Case No. 19-3585, 2020 WL 7586968, at *2 (6th Cir. Sep. 22, 2020) ("[The plaintiff] does not present any legislative evidence that Congress intended to create a damages remedy in this context, and the running of a prison is traditionally left to the legislative and executive branches of government."). Plaintiff brings his claims under the First Amendment and the Fifth Amendment's Due Process Clause. (ECF No. 1, PageID.28-31.) He alleges Defendant interfered with his ability to file prison grievances and object to his security classification. (*Id.*)

*Bivens* suits are exceptionally narrow, *Hernandez*, 140 S. Ct. at 743, and the recognition of a new *Bivens* action is "disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Ashcroft*, 556 U.S. at 675). The Sixth Circuit has previously declined to extend *Bivens* to federal prisoners, the class of individuals of which Plaintiff is a member, alleging violations of the same constitutional rights that Plaintiff cites in his complaint. *See Callahan*, 965 F.3d at 523; *Harris*, 2020 WL 7586968, at *2. Consequently, Plaintiff does not have a valid cause of action, and dismissal is warranted on this basis alone.

### B.  *Res judicata*

Even if Plaintiff could bring his claims under *Bivens*, dismissal is justified on other grounds. Plaintiff filed an action for mandamus against Defendant Hemingway on

February 26, 2020, seeking a reclassification of his security level and transfer to a lower security facility. (Case No. 20-10496.) Claims that accrued before that date are precluded in this case by *res judicata* because Plaintiff could have brought them in the earlier lawsuit. In the mandamus action, the court granted Defendant Hemingway's motion for summary judgment, because he did not have a "clear nondiscretionary duty" to act on Plaintiff's demands, and thus mandamus relief was not available. (Case No. 20-10496, ECF No. 34, PageID.761-62.)

*Res judicata* presents in one of two forms: issue preclusion and claim preclusion. *Mitchell v. Chapman*, 343 F.3d 811, 818 n.5 (6th Cir. 2003). "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Hanger Prosthetics & Orthotics E., Inc. v. Henson*, 299 F. App'x 547, 554 (6th Cir. 2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). Issue preclusion applies to the prior litigation of "an issue of fact or law actually litigated and resolved . . ." *Id*. Courts may raise the doctrine of *res judicata sua sponte* under appropriate circumstances. *Id*. at 553 (citing *Hutcherson v. Lauderdale County*, 326 F.3d 747 (6th Cir. 2003)).

"'A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.'" *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 528 (6th Cir. 2006) (emphasis in original) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). In other words, "[c]laim preclusion prevents parties from litigating matters that 'should have been advanced in an earlier suit.'" *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th

Cir. 2015) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984)).

> Establishing claim preclusion requires finding:
>
> (1) "a final judgment on the merits" in a prior action; (2) "a subsequent suit between the same parties or their privies"; (3) an issue in the second lawsuit that should have been raised in the first; and (4) that the claims in both lawsuits arise from the same transaction.

*Id*. (citing *Montana v. United States*, 440 U.S. 147, 153 (1979); *Wilkins v. Jakeway*, 183 F.3d 528, 532, 535 (6th Cir. 1999)). All criteria are met for Plaintiff's claims that arose before February 26, 2020, when he filed the mandamus action.

First, a final judgment was issued on October 2, 2020, when the court dismissed the case on the merits. Next, Defendant Hemingway was named as a defendant in both cases. All other defendants in this action are privies to Hemingway, because they are sued in their official capacity (ECF No. 1, PageID.10), and thus represent the same entity. *Heike v. Cent. Michigan Univ. Bd. of Trustees*, 573 F. App'x 476, 481 (6th Cir. 2014) (citing *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)) (other citation omitted) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). "[A] prior judgment for an official in his or her official capacity will preclude a subsequent action on the same claim (or a claim that could have been brought in the first action) against the relevant governmental entity." *Id*. Further demonstrating privity, Defendants Huddleston and Lea (as well as Plaintiff's "Unit Team," which includes Defendant Ellison[1]) were specifically named in the allegations in Plaintiff's mandamus action. (*See* Case No. 20-10496, ECF No. 1, PageID.1-2.)

---

[1]     Defendant Ellison is described as part of Plaintiff's Unit Team in exhibits to the current complaint. (*See*, *e.g.*, ECF No. 1-1, PageID.55, 61; ECF No. 1-2, PageID.77.)

In the instant suit, Plaintiff alleges Defendants retaliated against him for advocating for a security classification level reduction. In December 2019, Defendant Lea allegedly threatened to increase Plaintiff's security level if he continued to push for a transfer. (ECF No. 1, PageID.11.) Plaintiff grieved Defendant Lea's actions, and subsequently, Defendants Lea, Huddleston, and Hemingway raised his security level in retaliation for his complaints. (*Id.* at PageID.12.) These claims meet the third criterion: they predate the mandamus complaint, and by alleging retaliation in that complaint, Plaintiff acknowledged the existence of the cause of action. (*See* Case No. 20-10496, ECF No. 1, PageID.3.) Finally, the basis of Plaintiff's claims of retaliation here–his insistence on addressing the improper classification of his security level and Defendants' refusal to place him in a minimum-security facility–arose out of the same transactions as those which led to his mandamus action.

That the prior action was for a writ of mandamus and the current one a civil rights suit is not dispositive of the issue. "[A]lternative theories of recovery and . . . different remed[ies]" do not negate the application of claim preclusion "when those other theories could have been asserted and remedies could have been sought in the earlier action." *Musleh v. Am. Steamship Co.*, 326 F. Supp. 3d 507, 515 (E.D. Mich. 2018), *aff'd*, 766 F. App'x 214 (6th Cir. 2019) (citing *Rawe*, 462 F.3d at 529). Accordingly, Plaintiff's claims that arose before February 26, 2020, are precluded because they could have been brought at the time the mandamus action was filed.

*Res judicata* does not apply to the remainder of Plaintiff's claims, which accrued after the mandamus action was filed. The analysis of those claims follows.

13

## C.  Retaliation Claims

Plaintiff alleges Defendants retaliated against him for pressing for a security level change and transfer to a minimum-security facility, as well as for his grievances and complaints. (ECF No. 1, PageID.28, 30.) He also argues that several Defendants carried out a campaign of harassment and threats against him for the same conduct. (*Id*. at PageID.30-31.)

At the screening stage, the court must view Plaintiff's allegations in a "light most favorable" to him, and must "accept all well-pleaded factual allegations as true[.]" *Hill*, 878 F.3d at 203. The Sixth Circuit has observed that even when a plaintiff's ability to prove the facts alleged is questionable, "the district court cannot dismiss a pro se prisoner's pleading merely 'because the court finds the plaintiff's allegations unlikely.'" *Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Despite these generous standards, Plaintiff has not established that his First Amendment rights were violated by retaliatory actions and threats.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) . . . the adverse action was taken (at least in part) because of the protected conduct." *Thomas*, 481 F.3d at 440 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

Filing grievances against prison officials on one's own behalf is "undisputed[ly]" protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Litigating a civil rights

lawsuit is also protected. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (citing *Thaddeus–X*, 175 F.3d at 396 n. 12). Thus, Plaintiff meets the first prong of the retaliation test. *Thomas*, 481 F.3d at 440.

Next, an adverse action is one that is "*capable* of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citing *Bell*, 308 F.3d at 606) (emphasis in original). Even a threat may satisfy this standard, if the threat may deter the protected conduct. *Hill*, 630 F.3d at 472 (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)). "[B]ecause 'there is no justification for harassing people for exercising their constitutional rights,' the deterrent effect of the adverse action need not be great in order to be actionable." *Id*. at 473 (citing *Thaddeus-X*, 175 F.3d at 397). At the pleading stage, a plaintiff must "'merely . . . establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury.'" *Id*. (citing *Bell*, 308 F.3d at 606).

To meet the third prong of causation, a plaintiff must allege "that his protected conduct was a motivating factor" for the retaliatory acts. *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus–X*, 175 F.3d at 399); *see also Hill*, 630 F.3d at 475 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)) (adverse action must have been "motivated at least in part" by the protected conduct). "[R]etaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey*, 420 F.3d at 580 (citing *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). A plaintiff may rely on circumstantial evidence, but must still provide "specific, nonconclusory allegations" linking his conduct to the defendants' retaliatory acts. *Spencer v. City of Catlettsburg*,

506 F. App'x 392, 396 (6th Cir. 2012). "[C]onclusory allegations of retaliatory motive

'unsupported by material facts'" will not suffice. *Harbin-Bey*, 420 F.3d at 580 (quoting

*Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v.

Unknown Evert*, 84 F. App'x 553, 556 (6th Cir.2003) (requiring "concrete and relevant

particulars").

Plaintiff alleges several instances of Defendants' retaliation for his grievances

and complaints. First, he contends Defendant Ellison filed a disciplinary action against

him for lying or making a false statement because of his grievances and his pursuit of a

document necessary for his mandamus action. (ECF No 1, PageID.15; ECF No. 1-1,

PageID.60, 68.)

Charging an inmate with a major misconduct violation "is sufficiently adverse to

'deter a person of ordinary firmness from the exercise of the right at stake,' because

conviction of such a violation could result in the prisoner's segregation or loss of good

time credits." *Carter v. Dolce*, 647 F. Supp. 2d 826, 834–35 (E.D. Mich. 2009) (citing

*Thaddeus–X*, 175 F.3d at 396; *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002)).

"[A]ctions that result in more restrictions and fewer privileges for prisoners are

considered adverse" because privileges "are all that prisoners really have." *Maben*, 887

F.3d 252, 266–67 (6th Cir. 2018) (citing *Hill*, 630 F.3d at 474)). A finding of guilt at a

prison misconduct hearing does not act as an absolute bar to a prisoner's First

Amendment retaliation claim. *Id*. at 262.

While Ellison's actions meet the second element of First Amendment retaliation,

Plaintiff fails on the third, as he has not established that Defendant Ellison's motivation

was retaliatory. Again, circumstantial evidence may support this prong, "with temporal

proximity aiding in the analysis." *Spencer*, 506 F. App'x at 396. That is, a plaintiff may allege a chronology of events from which a defendant's retaliatory animus could reasonably be inferred. *Manning v. Bolden*, 25 F. App'x 269, 272 (6th Cir. 2001) (citations omitted). However, courts are "reluctant to find retaliatory motive from temporal proximity alone when that proximity is not 'extremely close.'" *Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. 2020) (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010)).

Here, Plaintiff contends Defendant Ellison retaliated against him over his grievances and complaints. But he fails to cite any grievances filed against Defendant Ellison or other individuals to support that assertion, let alone any filed "extremely close[ly]" to Ellison's actions. *Briggs*, 801 F. App'x at 960. It is true that Plaintiff's mandamus complaint was filed in this court approximately a week before the March 4, 2020, disciplinary ticket (*see* Case No. 3:20-cv-10496), but Plaintiff does not allege that action was the source of Defendant Ellison's retaliation.

Other evidence courts examine to determine causation include statements by defendants or the disparate treatment of other prisoners. *Hill*, 630 F.3d at 476; *see also Patterson v. Godward*, 370 F. App'x 608, 610 (6th Cir. 2010). But Plaintiff provides no such evidentiary support. In fact, his response to the disciplinary action did not allege retaliation for prior grievances, but instead that Ellison issued it "to teach me a lesson because I woke him up." (ECF No. 1-1, PageID.60.)

Plaintiff has provided only conclusory allegations of Defendant Ellison's retaliatory motive, and Plaintiff has not provided any evidence–direct or circumstantial–

in support. By "merely alleg[ing] the ultimate fact of retaliation," *Murray*, 84 F. App'x at

556, Plaintiff's argument for causation, and thus for actionable retaliation, fails.

Next, Plaintiff alleges Defendant Ellison planted contraband in his cell, which

resulted in him being strip-searched twice and his cell being "trashed." (ECF No. 1,

PageID.18-19.) Ellison did not participate in those searches, but "defendants . . . are

responsible for 'those consequences that inextricably follow from [their] alleged

retaliatory conduct[.]'" *LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013) (quoting

*Siggers–El*, 412 F.3d at 702). Plaintiff also names as defendants Unknown Corrections

Officer, Romero-Licita, and Lt. Dickman, the individuals who carried out the searches.

Strip and cell searches are justifiable responses to alleged violations of prison

rules. "Unquestionably, 'detect[ing] and deter[ring] the possession of contraband' is a

legitimate penological objective. Absent proof to the contrary, we must assume that a

search of a prisoner is initiated in an effort to detect and deter contraband." *Stoudemire*

*v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) (citations omitted).

Generally, "[a] single [cell] shakedown, unaccompanied by excessive use of

force, verbal threats, a pattern of previous questionable shakedowns or other such

factors, would not meet the adverse action standard." *Reynolds-Bey v. Harris*, 428 F.

App'x 493, 503-04 (6th Cir. 2011) (citing *Tate v. Campbell*, 85 F. App'x 413, 417 (6th

Cir. 2003). Similarly, because "a convicted prisoner['s] . . . privacy rights may be less

than those enjoyed by non-prisoners[]," even "suspicionless strip searches [are]

permissible as a matter of constitutional law, but only so long as they [are] reasonable

under the circumstances and performed pursuant to a legitimate penological

justification." *Stoudemire*, 705 F.3d at 572, 575 (citations omitted).

For the purposes of screening Plaintiff's complaint, the court must take as true his allegation the searches were a consequence of Defendant Ellison's having contraband planted in his cell and were not justified by legitimate penological objectives. Plaintiff's allegations provide *Stoudemire*'s "proof to the contrary" of the lack of legitimacy and reasonableness of these searches. He has adequately alleged adverse action. 705 F.3d at 572.

However, Plaintiff has not demonstrated that Defendant Ellison acted with a retaliatory motive because he again provides only conclusory allegations, not specific or concrete facts establishing causation. Plaintiff's most recent complaint about Defendant Ellison before the April 29, 2020, cell search was on March 27 (*see* ECF No. 1-1, PageID.70), which undermines temporal proximity. He provides no other allegations which would support a finding of retaliation.

Plaintiff's allegations against the other Defendants also fail on the third element of First Amendment retaliation. First, as explained above, prison searches are generally conducted for the legitimate penological purpose of detecting and deterring contraband. *Stoudemire*, 705 F.3d at 572. Plaintiff does not allege that Defendants Unknown Correctional Officer, Romero-Licita, or Lt. Dickman knew the charge of contraband possession was unfounded. As a result, the court must presume these Defendants' searches of Plaintiff's cell and person were for legitimate purposes. *Id*. And a "defendant must have known about the protected activity in order for it to have motivated the adverse action." *Thaddeus-X*, 175 F.3d at 387 n.3. Plaintiff has not alleged these defendants were aware of any of his First Amendment protected conduct and acted in retaliation.

19

Next, Plaintiff charges Defendants Dickman and Lachman with retaliation because they threatened "false stalking charges if He [sic] continued to seek investigations and removal of disorderly staff." (ECF No. 1, PageID.31.) The letter Plaintiff received from Lachman lists Plaintiff's complaints and actions against Defendant Ellison, describing them as "constantly accusing Counselor Ellison of abuse of power and demanding" Ellison be "investigate[d], removed from office and prosecuted[.]" (ECF No. 1-3, PageID.107.) These and other actions by Plaintiff caused a "hostile environment" for Ellison. (*Id.*)  The letter warns Plaintiff that if this behavior does not cease, he could be written up for stalking. (*Id.*)

In the prison setting, the type of conduct that is constitutionally protected is limited. "[I]t is generally much harder for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern." *Thaddeus-X*, 175 F.3d at 395 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). Federal courts "generally defer to the judgments of prison officials in upholding regulations,'" *Thompson v. Campbell*, 81 F. App'x 563, 567 (6th Cir. 2003), and are "ill equipped" to "second-guess prison administrators." *Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003)). Here, the court will not second-guess FCI Milan officials' determination that further complaints by Plaintiff against Defendant Ellison would represent an abuse of the grievance process. Violating a legitimate prison regulation is not "protected conduct[,]" and thus cannot be the basis for a retaliation claim. *Thaddeus-X*, 175 F.3d at 395. The same is true of "[a]busive or manipulative use

of a grievance system[.]" *Maben*, 887 F.3d at 264 (citing *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Plaintiff's own exhibits demonstrate between the day before and the day he received the "stalking" charge warning, he filed at least three grievances against Defendant Ellison and sent at least eight emails to Defendant Hemingway, all complaining about Ellison and demanding his removal. (*See* ECF No. 1, PageID.20-21, 97-106.) The Sixth Circuit found prison officials had not unconstitutionally retaliated against a prisoner who "was filing approximately five grievances or appeals . . . per week" because it was undisputed "that the sheer volume of Ward's complaints interfered with prison administration and caused tension among staff." *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). "Prison officials are clearly free to punish inmate conduct that threatens the orderly administration of the prison." *King*, 680 F.3d at 699 (quoting *Brown v. Crowley*, 312 F.3d 782, 791 (6th Cir. 2002)).

The Supreme Court has instructed courts to "accept[] as true" a plaintiff's factual allegations to determine whether they "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570.) However, that direction "is inapplicable to legal conclusions." *Id*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id*. (citing *Twombly*, 550 U.S. at 555.)

On this claim, the court disagrees with Plaintiff's conclusory allegation Defendants Lachman and Dickman's disciplinary orders were delivered with retaliatory intent. Instead, Defendants appear to have been motivated by a desire to maintain institutional order and prevent "interfer[ence] with prison administration." *Ward*, 58 F.3d at 274.

Plaintiff also complains about other instances in which Defendant Ellison attempted to harass or intimidate him. However, "[a]n inmate has no right to be free from verbal abuse, and minor threats do not rise to the level of a constitutional violation. *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (citing *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir.1987); *Thaddeus–X*, 175 F.3d at 398).

Finally, Plaintiff contends Defendant Lea retaliated against him by denying him case manager services. (ECF No. 1, PageID.13.) Plaintiff provides the note from Defendant Lea, which merely instructs him to request his security classification information at his next program review in July 2020. (*Id.* at PageID.65.) This was not a "denial" of services, nor would it deter a person of ordinary firmness from protected conduct.

None of Plaintiff's claims of retaliation meet the elements of a valid First Amendment retaliation claim. *Thomas*, 481 F.3d at 440. Thus, he has failed to state a claim upon which relief may be granted.

### D.  Interference with Access to the Grievance Process

Plaintiff next argues his First Amendment right to file grievances against prison officials was violated by Defendants Hemingway, Fournelle, Vaughn, Lea, and Ellison. (ECF No. 1, PageID.29.) "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron*, 203 F.3d at 415 (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)). However, "there is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (collecting cases). Prison officials are not constitutionally obligated "to follow all of [their]

22

grievance procedures," nor to "properly investigate" an inmate's grievances. *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (citation omitted).

In addition, "[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance." *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)); *see also Proctor v. Applegate*, 661 F. Supp. 2d 743, 755 (E.D. Mich. 2009) ("[A] prison official's failure to respond to a prisoner's letter or grievance does not state a constitutional claim."). This applies as well to *Bivens* actions: "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (citing *Iqbal*, 556 U.S. at 676).

Accordingly, allegations that Defendants denied or failed to respond to Plaintiff's complaints do not state a claim upon which relief may be granted. These allegations include the Regional Coordinator's denials of Plaintiff's complaints (ECF No.1, PageID.12, 16), and claims that Defendants Hemingway (*id.* at PageID.14-17, 23), Suydam (*id.* at PageID.16-17), and Fournelle (*id.*) rejected his complaints and appeals or failed to respond to them.

Plaintiff also cannot show his right to redress was lost. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Among other allegations of interference, Plaintiff

contends he was told not to use the grievance process (ECF No. 1, PageID.24) and that Defendant Ellison refused to provide him a grievance form. (*Id*. at PageID.11.) However, throughout the time period in question, Plaintiff reports numerous instances in which he was able to raise his complaints with Defendants Hemingway, Fournelle, and the Regional Coordinator, among others. For instance, Plaintiff emailed Defendants Hemingway, Suydam, and Fournelle, and typically received responses from those individuals. (*See id*. at PageID.17, 20, 23.) On other occasions, he obtained grievance forms from Defendant Ellison and submitted several complaints against him, despite Ellison's alleged intimidation. (*Id*. at PageID.20.)

Plaintiff was also able to continue to submit his complaints outside FCI Milan to the regional office. (*Id*. at PageID.25.) Plaintiff's emails, complaints, and even court filings continued after he was accused of "stalking" Defendant Ellison in mid-May and was purportedly instructed not to use the grievance process. (*Id*. at PageID.23-24.) This demonstrates Plaintiff maintained alternative ways to seek redress.

A *pro se* litigant's ability to invoke the judicial system may also demonstrate his or her access to the courts was not impeded. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Here, Plaintiff was able to file this lawsuit as well as the prior mandamus action. And regarding litigation, a plaintiff will be required to exhaust only "*available* administrative remedies." *Walker*, 128 F. App'x at 441 (citing 42 U.S.C. § 1997e(a)) (emphasis in original). A grievance process that is not "available" will not bar subsequent litigation due to a failure to exhaust. *Id*. at 446-47. In Plaintiff's mandamus case, the court did not rely on his failure to exhaust his claims when it dismissed the

action, despite Defendant Hemingway's invitation to do so in his motion for summary judgment. (Case No. 20-10496, ECF No. 34, PageID.762.)

Plaintiff cannot demonstrate that his First Amendment rights were violated by Defendants' interference with his access to the grievance process. Plaintiff's claims of interference with the grievance process and denial of his access to it are not claims upon which relief may be granted.

### E.  Due Process Claims

Plaintiff argues his Fifth Amendment right to due process in "prison custody classification and the grievance process" was violated by Defendants. (ECF No. 1, PageID.30.) He further states that "Defendants knowingly circumvented congressional/agency guidance to prevent Plaintiff from receiving the same services, opportunities, and processing as other inmates." (*Id*.)

First, substantive due process claims face a "virtually insurmountable uphill struggle," because the plaintiff must establish "that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 798–99 (W.D. Mich. 2012) (citing *Rimmer–Bey v. Brown*, 62 F.3d 789, 791 n. 4 (6th Cir.1995)). Due process is intended to protect "the individual against arbitrary action of government[.]" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). *Lewis* opined that "only the most egregious official conduct" or "conduct intended to injure in some way unjustifiable by any government interest" would shock the conscience and be considered unconstitutionally arbitrary. *Id*. at 846, 849. Plaintiff's complaints of interference with his access to the grievance process and with his proper security classification and

placement in no way suggests conduct so egregious as to violate his due process rights.

Plaintiff has also failed to show that he was denied procedural due process. Such claims require a two-pronged inquiry: first, "whether there exists a liberty or property interest which has been interfered with by the State, [and] second . . . whether the procedures attendant upon that deprivation were constitutionally sufficient." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Claims about security classification and facility placement do not establish a liberty interest. This is so because "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Only those sanctions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" will implicate the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Analyzed against those standards, courts have determined that "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Cash v. Reno*, 134 F.3d 370 (6th Cir. 1997) (Table) (citing *Moody v. Daggert*, 429 U.S. 78, 88 n. 9 (1976); *Meachum*, 427 U.S. at 224); *accord Bazzetta*, 430 F.3d at 804. And as explained in the previous section, Plaintiff has no "constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker*, 128 F. App'x at 445. Plaintiff's assertions of due process rights violations are not claims on which relief may be granted.

26

## F.  Additional Claims and Defendants

Plaintiff's only allegation against Defendant Huddleston not precluded by *res judicata* is that Huddleston gave Plaintiff a document Defendant Lea refused to provide but did so too late for Plaintiff to use it in his mandamus case. (ECF No. 1, PageID.14.) "[T]he right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate accessibility to the courts." *McFarland v. Luttrell*, 51 F.3d 272 (6th Cir. 1995) (citing *Knop v. Johnson*, 977 F.2d at 996, 1009 (6th Cir. 1992)). Demonstrating a violation of that right requires a plaintiff "show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct." *Colvin v. Schaublin*, 113 F. App'x 655, 657 (6th Cir. 2004) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

To that end, Plaintiff does not cite any documents or evidence he was denied that would have resulted in a different outcome for his mandamus action. The basis for the court's denial of mandamus relief was a legal determination regarding the "discretionary" aspect of Bureau of Prisons policy, not the facts of Plaintiff's case. The presence or absence of documentary evidence would not have altered that outcome.

As to Defendant Chambers, Plaintiff's sole allegation is that he instructed Plaintiff to request a document from Defendant Lea (ECF No. 1, PageID15.). Plaintiff makes no connection between Chambers' conduct and any constitutional injury he suffered.

## G.  Plaintiff's Motions for Preliminary Injunction and Temporary Restraining Order

Plaintiff seeks a preliminary injunction and temporary restraining order pursuant to Fed. R. Civ. P. 65. (ECF No. 5.) Plaintiff's proposed show cause order seeks to direct Defendants to "adhere to the PLRA" regarding legal mail, and to refrain from

intimidating and retaliating against Plaintiff, from questioning him about this civil suit, and from denying him "free and uninhabited [sic] access to administrative and judicial forms for seeking redress of grievances." (ECF No. 5, PageID.183-184.) In a second motion for a TRO, Plaintiff requests the court order Defendants to "restrain themselves" until his first motion for preliminary injunction is heard on the merits. (ECF No. 10, PageID.231.)

A plaintiff seeking a TRO or preliminary injunction bears a heavy burden, because "preliminary injunctions are extraordinary and drastic remedies . . . never awarded as of right." *Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015) (citation omitted). Determining whether to grant such relief requires balancing four factors:

> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury absent the
> injunction; (3) whether the injunction would cause substantial harm to
> others; and (4) whether the public interest would be served by the
> issuance of an injunction."

*Id*. (citing *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). "Although no one factor is controlling," a movant who cannot demonstrate likelihood of success on the merits typically cannot attain preliminary relief. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). As explained above, Plaintiff has not established even a plausible claim for relief, so he cannot hope to reach the higher threshold of a "strong likelihood of success on the merits."

Further, "[a] plaintiff must always show irreparable harm before a preliminary injunction may issue." *SEIU Health Care Michigan v. Snyder*, 875 F. Supp. 2d 710, 723 (E.D. Mich. 2012) (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100,

104 (6th Cir. 1982)). Plaintiff's motions for relief do not establish that he would suffer irreparable injury without an injunction or TRO.

Because the first two factors weigh so significantly against Plaintiff, the court need not address the remaining parts of the inquiry. *See In re DeLorean Co*., 755 F.2d 1223, 1228 (6th Cir. 1985). The motions will be denied.

### H.  *Pro Se* Litigant E-Filing Access

Finally, Plaintiff has moved for access to the court's *pro se* e-filing system. (ECF Nos. 6, 9.) He argues he has had difficulty mailing documents to court and that the email system at FCI Milan is the most reliable form of communication for its inmates. (ECF No. 6, PageID.188.) He notes such access would permit "timely filing." (ECF No. 9, PageID.226.)

In response to the COVID-19 pandemic and closure of the Federal District Court for the Eastern District of Michigan courthouses, the Clerk of the Court established a form of electronic filing for *pro se* litigants to upload their pleadings. *See Temporary Pro Se Document Upload*, United States District Court for the Eastern District of Michigan, http://www.mied.uscourts.gov/index.cfm?pageFunction=proSeDocs (last visited May 13, 2021). However, the court's Local Rules limit "*pro se* part[ies]" entitled to use the system to non-incarcerated persons only. United States District Court for the Eastern District of Michigan, Electronic Filing Policies and Procedures 2, 5 (2020). Plaintiff is not entitled to use the *pro se* e-filing system.

The prison mailbox rule protects Plaintiff's interest in filing timely pleadings. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002)). The filing date is the date a prisoner litigant submits a document

to prison authorities for mailing, regardless of when the authorities actually mail it. *Richard*, 290 F.3d at 813; *see also Meeks v. Michigan Dep't of Corr.*, No. 2:19-CV-12506, 2020 WL 6161263, at *1 (E.D. Mich. Oct. 21, 2020) (Steeh, J.) (citing *Hudson v. Martin*, 68 F. Supp. 2d 798, 799, n. 2 (E.D. Mich. 1999)). Accordingly, access to the e-filing system is not necessary to protect Plaintiff's ability to litigate his case in this court, and his motions will be denied.

### I.   Defendants' Motion to Dismiss

On May 6, 2021, Defendants moved to dismiss the complaint. (ECF No. 11.) As explained above, Plaintiff has failed to state a claim upon which relief will be granted, and under the PLRA, the court will dismiss Plaintiff's claims *sua sponte*. *See Flanory v. Bonn*, 604 F.3d at 252. Thus, the court will terminate Defendants' motion as moot.

### IV.   CONCLUSION

IT IS ORDERED that the Complaint is summarily DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c).

IT IS FURTHER ORDERED that Plaintiff's "Motion for Preliminary Injunction" (ECF No. 5), his "Motion for . . . Temporary Restraining Order" (ECF No. 10), and his "Motion[s] for Access to Pro-Se Electronic Filing" (ECF Nos. 6 and 9) are DENIED.

Finally, IT IS ORDERED that Defendant's "Motion to Dismiss" (ECF No. 11) is TERMINATED AS MOOT.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 18, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 18, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                                       /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-13130.FLOURNOY.SummaryDismissal.PLS.RMK.docx